```
                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MARYLAND
```

| | |
|---|---|
| UNITED STATES            ) | |
|                          ) | |
|     v.                   ) | Crim. No. 8:19CR00077-009 |
|                          ) | Judge Xinis |
| ANOG MAAREK              ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF SENTENCING**

Defendant, Mr. Maarek ("Mr. Maarek"), through undersigned counsel, hereby responds to the Presentence Report ("PSR"), and sets forth his position with respect to sentencing.

**1. Objections To The Presentence Report.**

Mr. Maarek makes the following corrections to the PSR. In Para. 75, pp. 14-15, he is not the owner of the apartment Dobutca, in Budapest Hungary. His father owns that property. The 2016 Mercedes Benz is also the property of his father. His Total Assets add up to around $270,000.00.

Under Liabilities, he has an additional loan with his father of $20,000.00. His Total Liabilities add up to $205,000.00. His Total Net Worth is $65,000.00. He has no cash or monthly cash flow. His nominal "assets" are tied up in real property.

The Advisory United States Sentencing Guidelines Offense Level is 26. The Criminal History Category is I. The Advisory U.S.S.G. Range is 63-78 months.

**2. Anog Maarek: History And Characteristics.**

Pursuant to 18 U.S.C. Sec. 3553(a)(1), and *United States v. Booker*, 543 U.S. 220, 245 (2005), the Court should begin its

analysis of sentencing by considering the history and characteristics of Mr. Maarek. *See Rita v. United States*, 551 U.S. 338, 364-365 (2007) (Stevens, J., concurring) ("Matters such as age, education, mental or emotional condition ... employment history ... family ties ... are not ordinarily considered under the Guidelines. They are, however, matters that Sec. 3553(a) authorizes the sentencing judge to consider.") (Citations omitted.)

A. **Mr. Maarek's Educational Background**.

Mr. Maarek is 29 years old. He has a high school diploma, but he has studied other areas after high school, such as finance, music, and management and sales. (PSR, Paras. 59-61.) Mr. Marek speaks four languages, English, French, Hebrew and Russian.

B. **Mr. Maarek's Employment**.

Mr. Maarek has always been a hard worker. He has held numerous positions since high school, including jobs in construction, real estate, art dealing, work at a bank, and in the Israeli Army. (PSR, Paras. 764-73.)

C. **Mr. Maarek's Health**.

Mr. Maarek notes for the Court that nerve issue in his hands has re-emerged. (PSR, Para. 54,) He is trying to manage the panic attacks that he continues to experience, particularly with being incarcerated and the problems in CTF with the spread of COVID-19 among inmates and jail personnel. (PSR, Para. 55.)

3

D. **Mr. Maarek's Family And Friends**.

Mr. Maarek is close with both his mother, Gila Bell-Perry, and his father, Michel Maarek. (PSR, Paras. 47-52.) Although his parents divorced, they remained friendly, and have been and are now very supportive of Mr. Maarek.

In fact, Mr. Maarek has an amazing group of highly supportive family and friends. They speak well of his many fine qualities. Orna Barbier speaks of Anog as a "kind and optimistic talented wise man ..." Anog lost a close cousin in the Israeli military. He believes that "Anog has learned his lesson...."

A colleague from the art world, Jacob Gildor, writes "[w]hile working with him, I found a trustful young man, honest and very reliable...."

Ori Rosenberg writes "Anog is the kind of people when you need them they will be there for you."

Maor Galili writes "Anog is a person of good moral character ... Anog has made mistakes, and he is incredibly remorseful, and is willing to do whatever it takes to make reparations."

The Court will see a heartfelt and sincere letter from Anog's Mother, Gila Bell-Perry. The letter is emotional, responsible, and beautiful. A Mother's ache, her sense of remorse. She states in part "I ask for compassion from you, Your Honor. I want to get my son back, who is now in a terrible condition in prison. The Corona pandemic that is raging now can get to the prison and his life can

be in danger. I am sick worried about him. From my conversations with him, he made clear to me, how remorseful he feels for everything, and mostly of all of the grief he had done to innocent people."

Finally, Anog's aunt, Keren Barnovsky, writes "As a social worker and psychotherapist, I can say that there was a sequence of traumatic experiences and stressful events in his life such as his parents' divorce, financial instability, military service precipitation [sic], and more ... I very much believe in the ability of Anog to change, correct his ways and choose right. I know for sure that he is a good man and worth the opportunity to rebuild his life."

These letters speak to a warm, loving, kind, funny, sensitive young man – who made a terrible error in judgment by his conduct in this case. (*See* all Letters of Support, attached hereto.)

**E. Mr. Marek's Acceptance Of Responsibility.**

Mr. Maarek's accepts full responsibility for his conduct in this case. He entered a timely plea of guilty. (PSR, Para. 39.) Mr. Maarek is very remorseful about his conduct. He offers no excuses. He has directed counsel to inform the Court that he is ashamed of his conduct, and he is filled with guilt and disgrace with his exploitation of customers, particularly older people, in taking their money from them under these fraudulent circumstances.

Mr. Maarek can assure that the Court that he will never, never

Case 8:19-cr-00077-PX   Document 94   Filed 04/22/20   Page 5 of 10

5

engage in any such illegal conduct again. Further, Mr. Maarek understands the restitution he must make, and he will do so.

### 3. **The Legal Standard For Sentencing Under Sec. 3553(a)**.

As set forth in the Plea Agreement, the parties have a right to advocate for a reasonable sentence. (Plea Agreement, Para. 9, p. 5.) However, a "reasonable sentence" within the Advisory Guidelines range is not necessarily an appropriate sentence. While sentencing courts must consider the applicable Guidelines range, a sentencing court must also "tailor the sentence in light of other statutory concerns." *Booker*, 543 U.S. at 245 (citing 18 U.S.C. Sec. 3553(a)).

Sentencing courts enjoy greater latitude to impose alternative sentences that are also reasonable so long as they are tied to the Sec. 3553(a) factors. *See Gall v. United States*, 552 U.S. 38, 59 (2007) ("the Guidelines are not mandatory, thus the 'range of choice dictated by the facts of the case' is significantly broadened. Moreover, the Guidelines are only one of the factors to consider when imposing a sentence, and Sec. 3553(a)(3) directs the [sentencing] judge to consider sentences *other than imprisonment*.") (Emphasis added.)

Further, pursuant to 18 U.S.C. Sec. 3553(a)(2), the sentencing court must impose a sentence that is minimally sufficient to achieve the goals of sentencing based on all of the Sec. 3553(a) factors present in the case. This "parsimony provision" serves as the "overarching instruction" of the statute. *See Kimbrough v.*

*United States*, 552 U.S. 85, 111 (2007). *See also* Sec. 3553(a) ("[t]he court shall impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth in paragraph (2) of this subsection"). (Emphasis added.)

At this moment, with the Corona Virus crisis throughout the world, and in particular, the dangerous conditions in jails and FCIs, the Court must factor into its analysis of the Sec. 3553 criteria the impact of the Corona Virus crisis on this sentence.

### 4. The Objectives Of Sec. 3553(a)(2) Can Be Met By A Sentence Of Time Served.

To begin the sentencing analysis, the Court should be mindful that there is an ICE Detainer on Mr. Maarek. Upon the completion of any period of incarceration, Mr. Maarek will be deported, likely to Israel.

Pursuant to 18 U.S.C. Sec. 3553(a)(2), the sentencing court must impose a sentence that is minimally sufficient to achieve the goals of sentencing based on all of the Sec. 3553(a) factors present in the case. With this statutory instruction in mind, it is manifest that a sentence in a 63-78 month range, or anything like that, would be far, far disproportionate, given the sentences imposed for similarly situated defendants who have already been sentenced in this case. (*See* Government's Sentencing Memo, pp. 4-7.)

As the Government states in its Sentencing Memorandum, "Section 3553(a)(6) directs the Court to consider 'the need to

avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" (Government Sentencing Memorandum, p. 7.) The Government then lists five co-conspirators, who were sentenced/incarcerated in a range from four (4) months to fourteen (14) months.

For example, co-conspirator Liora Welles was "directly responsible for approximately $2,395,310 in investor losses." (8:18CR00613-TDC, Doc. 6, Para. 6bi, p. 4; Doc. 6-1, p. 13. ) (Mr. Maarek's losses were $1,591,077.) Her Offense Level was 23, Criminal History Category I, for a Guideline Range of 46-57 months. Welles received fourteen (14) months of imprisonment. (Government Memo, p. 7.)

Co-conspirator Lissa Mel's (8:18CR00571-001-TDC) Offense Level was 19, Criminal History I, for a Guideline Range of 30-37 months. Mel received twelve (12) months and one day of imprisonment. (Government Memo, p. 7.)

Co-conspirator Austin Smith's (8:19CR00087-TDC) Offense Level was 13, Criminal History I, for a Guideline Range of 12-18 months. Mel received twelve months and one day of imprisonment. (Government Memo, p. 7.)

At this time, the Court must consider any sentence it imposes on Mr. Maarek in the context of the Pandemic, and the health dangers and challenges in jails, prisons and FCIs around the country. As the Court well knows, prisons, FCIs and halfway houses

are looking for ways to reduce their populations. They are releasing inmates whose formal "time" has not been completed. These are factors and realities that the Court must consider.

Mr. Maarek notes for the Court the following:

* Mr. Maarek was first arrested and detained by Hungarian law enforcement on September 12, 2019; (PSR, p. 1);

* Mr. Maarek was transferred to the custody of U.S. Marshal's on November 7, 2019; (PSR, p. 1);

* There is an ICE Detainer lodged against Mr. Maarek;

* Mr. Maarek will be taken into custody by ICE, and later deported after the completion of any period of incarceration;

* Mr. Maarek will be on Supervised Release for three years;

* Mr. Maarek will have to pay restitution likely in the amount of $1,591,077;

* Mr. Maarek has no prior criminal record; (PSR, Paras. 41-42);

* Mr. Maarek is not charged with a crime of violence or a drug crime.

Mr. Maarek has already been detained in this case for eight (8) months, both in Hungary and the United States. Once transferred to ICE for deportation, he will continue to be detained for another 30-60 days, prior to his deportation.

Given all of these factors, the 3553(a) goals can be met with a sentence as follows:

9

1. A period of incarceration of Time Served;

2. A period of supervised release for three (3) years;

3. Mental health counseling as directed by the Probation Office while on Supervised Release;

4. Credit for time served from November 8, 2019.

To conclude, we are not living in ordinary times. This Court may well impose sentences at this time that it otherwise might not. We must deal with the circumstances of the Pandemic, however difficult. Mr. Maarek, 29 years old, no prior record, a non-violent and non-drug crime, will be deported. The Defense respectfully submits that incarcerating Mr. Maarek for another 4-6 months, or longer, would elevate form over the substance of Covid-19 that we must deal with at this time.

                                                  Respectfully submitted,

                                               _____/S/_____
Peter L. Goldman, Esq.
SABOURA, GOLDMAN & COLOMBO, P.C.
524 King Street
Alexandria, VA  22314
(703) 684-6476 (o)
(703) 549-3335 (f)
pgoldmanatty@aol.com
Counsel for Defendant
Anog Maarek

10

**CERTIFICATE OF SERVICE**

     I hereby certify that on this $^{22nd}$ day of April, 2020, a copy of the foregoing Memorandum was sent via ECF to: AUSA Lawrence R. Atkinson, AUSA Jessee C. Alexander-Hoeppner, and AUSA Caitlin R. Cottingham, United States Attorney's Office for the District of Maryland, 6406 Ivy Lane, Suite 200, Greenbelt, MD 20770, and to: USPO Edwin Encarnacion, United States Probation Office, at Edwin_Encarnacion@mdp.uscourts.gov.

                                                    _____/S/_____
                                                         Peter L. Goldman